IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LESLIE JAVANSALEHI,

        Plaintiff,

        3:10-CV-850-PK

        OPINION AND
v.        ORDER

BF & ASSOCIATES, INC., BABAK
FALLAZADEH, and MOHAMMED-
REZA LOTFI,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiff Leslie Javansalehi ("Javansaheli") filed this action against BF & Associates, Inc.,

Costco Wholesale Corporation, Babak Fallazadeh, and Mohammed-Reza Lotfi on July 20, 2010.

Javansalehi voluntarily dismissed Costco as a defendant on September 7, 2010.

        BF & Associates, doing business as Atlas Imports, employed Javansalehi as a sales

representative at a Hillsboro, Oregon, retail location from approximately January 10, 2009,

Page 1 - OPINION AND ORDER

through May 26, 2009. Javansalehi's husband, Ahad Javansalehi ("Ahad") was also an employee

of BF & Associates ("Atlas"), as was her son (and Ahad's stepson) Josh Sumrell. Fallazadeh is

(and at all material times was) the principal and owner/manager of Atlas, and Lotfi is (and at all

material times was) an employee of Atlas. By and through her complaint, Javansalehi brings

eleven separate causes of action arising out of the termination of her employment by Atlas and

out of the terms and conditions of her employment prior to her termination. Specifically,

Javansalehi alleges Atlas' liability for wrongful discharge in violation of Oregon common law,

Atlas' and Fallazadeh's liability for failure to pay overtime in violation of the federal Fair Labor

Standards Act (29 U.S.C. § 216(b)), failure to pay Javansalehi final wages due and owing

following the termination of her employment within the time specified for doing so under Or.

Rev. Stat. 652.140(1),[1] retaliation for complaining about wage discrimination in violation of Or.

Rev. Stat. 652.355, retaliation in response to whistle-blowing activity in violation of Or. Rev.

Stat. 659A.199, family relationship discrimination in violation of Or. Rev. Stat. 659A.309, and

retaliation for opposing unlawful practices in violation of Or. Rev. Stat. 559A.030(1)(f), Atlas',

Fallazadeh's, and Lotfi's liability for aiding and abetting discrimination and/or retaliation in

violation of 659A.030(1)(g), intentional interference with prospective economic relations while

acting within the scope of their employment duties and/or as Javansalehi's employer,[2] and

---

[1] At oral argument on the motion now before the court, the parties indicated that they
have settled Javansalehi's claim under Or. Rev. Stat. 652.140(1).

[2] At oral argument on the motion now before the court, counsel for Javansalehi indicated
that Javansalehi has abandoned her claim for intentional interference with prospective economic
relations in its entirety.

defamation,[3] and Fallazadeh's and Lotfi's liability for intentional interference with existing

economic relations while acting outside the scope of their employment duties.[4] This court has

federal question jurisdiction over Javansalehi's FLSA overtime claim pursuant to 28 U.S.C. §

1331, and supplemental jurisdiction over her state-law claims pursuant to 28 U.S.C. § 1367.

Now before the court is defendants' motion (#19) for partial summary judgment as to nine

of Javansalehi's eleven claims. By and through their motion, defendants seek summary

adjudication of Javansalehi's three retaliation claims (brought under Or. Rev. Stat. 652.355,

659A.199, and 659A.030(1)(f)), family relationship discrimination claim (brought under Or.

Rev. Stat. 659A.309), aiding and abetting claim (brought under Or. Rev. Stat. 659A.030(1)(g)),

common-law wrongful discharge claim, two common-law intentional interference claims, and

common-law defamation claim. I have considered the motions, all of the pleadings on file, and

oral argument on behalf of the parties. For the reasons set forth below, defendants' motion is

granted in part and denied in part as discussed below.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues

---

[3] At oral argument on the motion now before the court, counsel for Javansalehi indicated that Javansalehi has abandoned her claim for defamation to the extent alleged against Atlas and Fallazadeh.

[4] At oral argument on the motion now before the court, counsel for Javansalehi indicated that Javansalehi has abandoned her claim for intentional interference with existing economic relations to the extent alleged against Fallazadeh.

exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND[5]

Atlas is in the business of selling handmade imported rugs at retail. A significant portion of Atlas' business is conducted in stores located within retail establishments operated by former defendant Costco. Atlas' Hillsboro location, where Javansalehi was employed, is such a store.

In September 2007, Atlas hired Ahad, Javansalehi's husband, as the sales manager at Atlas' Hillsboro location. "Sales manager" was, according to Fallazadeh's testimony, the "highest-ranking employee" position in that location at that time. Shortly thereafter, Atlas hired Lotfi and Sumrell (Javansalehi's son) to work under Ahad in the Hillsboro location.

In or around December 2008 or January 2009, Atlas moved Sumrell from his position in the Hillsboro location to a "roadshow" position, which required him to travel to Costco locations lacking a permanent Atlas presence and to spend one to two weeks selling rugs out of each such location. Effective approximately January 10, 2009, Atlas hired Javansalehi to fill the sales position left vacant by Sumrell's departure from the Hillsboro location. Defendants offer

---

[5] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

Fallazadeh's uncontroverted testimony that Fallazadeh was aware of Javansalehi's marital relationship to Ahad at the time he made the decision to hire her. Atlas initially required Javansalehi to work six days per week at the Hillsboro location, at a monthly salary of $4,000.

Defendants offer Fallazadeh's testimony that, shortly after Javansalehi's hire, he began to suspect that Javansalehi and Ahad were colluding to reduce the number of hours each spent working in the Hillsboro location, while drawing pay from Atlas as though each were working the full number of hours Atlas required. Fallazadeh emphasizes that, because Atlas' business model assumed a low volume of high-profit sales, it was essential that salespeople be ready and available at all times to serve customers on those relatively infrequent occasions when customers entered the store. Fallazadeh testifies that Atlas' delivery employees would report the Javansalehis' unanticipated absence from the store when deliveries were made, and that when Fallazadeh would call Ahad's mobile phone to ask questions about inventory, Ahad would frequently claim to be unable to answer the question because he was serving a customer, and would only call back to respond 30 to 45 minutes later (that is, after the lapse of sufficient time to permit travel to the Hillsboro store). Defendants take the position that Ahad's proffered explanation for the need to call back is inherently implausible, in that a salesman generally will not take a phone call while serving a customer, but rather will usually wait until the customer has been served before taking or returning calls.

On a weekend day some time in the first three months of 2009, Fallazadeh made a "surprise visit" to the Hillsboro location, and found that Ahad was absent despite being scheduled to work. Javansalehi called Ahad and advised him that Fallazadeh was in the store. While Fallazadeh waited for Ahad to return, Fallazadeh observed Javansalehi serving customers.

Defendants offer Fallazadeh's testimony that his observation of Javansalehi's sales methods established that she was not a "qualified" salesperson and that she was "bad" at selling rugs. Some time thereafter, Fallazadeh asked Lotfi to "keep an eye on the Javansalehis' attendance" and to report to him if they continued to miss work.

According to Fallazadeh's testimony, it was Atlas' practice to offer health insurance to those of its employees employed on a full-time basis, after they had worked for the company for three months.  In or around April 2009, after Javansalehi had been working for Atlas for approximately three months, Javansalehi complained to Ahad that Atlas was not providing her with health benefits.  Ahad subsequently brought the complaint to Ahad's attention.  According to Fallazadeh's testimony, Fallazadeh had at that time already made a decision to reduce Javansalehi's work schedule to four days per week – making her ineligible for health insurance benefits – but had not yet either implemented the decision or communicated it to Javansalehi.  It appears undisputed that Fallazadeh so advised Ahad at that time.  Atlas subsequently reduced Javansalehi's work schedule to four days per week, and declined to provide her with health insurance benefits.

At some unspecified time during the tenure of Javansalehi's employment by Atlas, Javansalehi had a discussion with Lotfi regarding the fact that Lotfi (like Javansalehi) was not paid overtime.  Javansalehi told Lotfi that his pay stubs constituted evidence that Atlas was violating federal wage and hour law by failing to pay Lotfi overtime.  Javansalehi subsequently reported having had that conversation with Lotfi to her husband, Ahad, and to no other person.  Ahad warned Javansalehi not to press the matter further and not to tell anyone else that the conversation had taken place.  Neither Ahad nor Lotfi reported the conversation to any other

person, and Fallazadeh did not learn that the conversation had taken place until after this action had been filed.

In late May 2009, Lotfi reported to Fallazadeh that the Javansalehis were both absent from the workplace despite being scheduled to work. Lotfi further advised Fallazadeh at that same time of his opinion that Javansalehi was a poor salesperson. At or around that time, Fallazadeh made the decision to terminate both Javansalehis' employment. It appears undisputed that the last day either of the Javansalehis worked for Atlas was May 26, 2009.

It is undisputed that neither Javansalehi nor Ahad filed any complaint or grievance with any state or federal agency regarding terms or conditions of employment at Atlas prior to the date this action was initiated.[6] It is further undisputed that Atlas continues to employ Sumrell, and that Sumrell was employed as acting manager of the Hillsboro location for a period of time following Javansalehi's and Ahad's terminations.

## ANALYSIS

Javansalehi's claims, in the order in which they are enumerated in Javansalehi's complaint, are as follows:

(1)     failure to pay overtime in violation of 29 U.S.C. § 216(b) (alleged against Atlas and Fallazadeh);

(2)     failure to make timely payment of final wages in violation of Or. Rev. Stat. 652.140(1) (alleged against Atlas and Fallazadeh; at oral argument the parties reported that they have settled this claim);

(3)     retaliation for complaining about wage discrimination in violation of Or. Rev. Stat. 652.355 (alleged against Atlas and Fallazadeh);

---

[6] Ahad filed an action in state court against the defendants in this action at approximately the same time that Javansalehi filed this action in state court. The parties have advised the court that Ahad's state-court action is pending at this time.

(4)    retaliation in response to whistle-blowing activity in violation of Or. Rev. Stat. 659A.199 (alleged against Atlas and Fallazadeh);

(5)    family relationship discrimination in violation of Or. Rev. Stat. 659A.309 (alleged against Atlas and Fallazadeh);

(6)    retaliation for opposing unlawful practices in violation of Or. Rev. Stat. 659A.030(1)(f) (alleged against Atlas and Fallazadeh);

(7)    aiding and abetting discrimination and/or retaliation in violation of 659A.030(1)(g) (originally alleged against Atlas, Fallazadeh, and Lotfi; the parties report that Javansalehi has voluntarily withdrawn the claim to the extent alleged against Atlas and Fallazadeh);

(8)    common-law wrongful discharge (alleged against Atlas only);

(9)    intentional interference with prospective economic relations while acting within the scope of their employment duties and/or as Javansalehi's employer (alleged against Atlas, Fallazadeh, and Lotfi; at oral argument, Javansalehi advised the court that she has voluntarily withdrawn this claim);

(10)   intentional interference with existing economic relations while acting outside the scope of their employment duties (originally alleged against Fallazadeh and Lotfi; the parties report that Javansalehi has voluntarily withdrawn this claim to the extent alleged against Fallazadeh); and

(11)   defamation (originally alleged against Atlas, Fallazadeh, and Lotfi; the parties report that Javansalehi has voluntarily withdrawn this claim to the extent alleged against Atlas and Fallazadeh).

As noted above, defendants now move for summary judgment as to Javansalehi's third through

eleventh enumerated causes of action only.

**I.    Javansalehi's Third Cause of Action (Wage-Claim Retaliation)**

Oregon law provides that employers may not discharge or otherwise discriminate against

employees for, among other things, making a wage claim (wage-claim retaliation):

(1)    An employer may not discharge or in any other manner discriminate against an employee because:

Page 8 - OPINION AND ORDER

(a)    The employee has made a wage claim or discussed, inquired about
or consulted an attorney or agency about a wage claim.

(b)    The employee has caused to be instituted any proceedings under or
related to ORS 652.310 to 652.414.

(c)    The employee has testified or is about to testify in any such
proceedings.

(2)    A violation of this section is an unlawful employment practice under ORS
chapter 659A. A person unlawfully discriminated against under this
section may file a complaint under ORS 659A.820 with the Commissioner
of the Bureau of Labor and Industries.

Or. Rev. Stat. 652.355. The Oregon Court of Appeals has noted that Or. Rev. Stat. 652.320(7)

defines a wage claim for purposes of Section 355 as "an employee's claim against an employer

for compensation for the employee's own personal services . . . ," including a claim for "wages,

compensation, damages or civil penalties provided by law to employees in connection with a

claim for unpaid wages." *Perri v. Certified Languages Int'l, LLC*, 187 Or. App. 76, 88-89

(2003), *quoting* Or. Rev. Stat. 652.320(7). The *Perri* court went on to specify that:

> "Compensation" means "payment for value received or service rendered."
> Webster's Third New Int'l Dictionary 463 (unabridged ed 1993) (emphasis added).
> **That definition, which employs a past tense verb, suggests that compensation
> is payment for work previously performed.** That interpretation of the term
> "compensation" also is consistent with the second clause of the subsection. Under
> that clause, in addition to "wages" and "compensation," a claimant may recover
> damages and civil penalties. He or she may do so, however, only "in connection
> with a claim for *unpaid* wages." (Emphasis added.) Thus, although the second
> clause of ORS 652.320([7]) permits recovery of amounts that are not themselves
> compensation for work, to the extent that those amounts are available in the
> context of a wage claim, the use of the past tense ("unpaid wages") again indicates
> that **the wage claim must pertain to work previously performed**.

*Id.* at 89 (bolded emphasis supplied; footnote omitted).

In her complaint, Javansalehi premised her claim for wage-claim retaliation solely on her

conversation with Lotfi regarding Lotfi's entitlement to overtime compensation and Atlas' failure to pay such compensation to Lotfi. As defendants argue in their moving papers, Javansalehi's statements to Lotfi cannot have constituted protected activity under Section 355, because the subject of those statements was compensation due to Lotfi for his services to Atlas, and not compensation due to Javansalehi for her "own personal services." *Id.* at 88. As a clear matter of Oregon law, Javansalehi's cause of action for wage-claim retaliation therefore cannot survive summary judgment to the extent premised on Javansalehi's conversation with Lotfi. *See id.* at 88-89.

In opposition to defendants' partial summary judgment motion, Javansalehi for the first time adopted the position that her cause of action for wage-claim retaliation is premised, not on her conversation with Lotfi, but rather on her complaint to Ahad, subsequently conveyed to Fallazadeh by Ahad, regarding Atlas' failure to provide Javansalehi with health insurance benefits,[7] a factual predicate not referenced in any manner in Javansalehi's pleading. Defendants argue that the court should decline to consider Javansalehi's newly articulated factual predicate, citing *Coleman v. Quaker Oats*, 232 F.3d 1271, 1291-1293 (9th Cir. 2000) for the proposition that a plaintiff will not ordinarily be permitted to escape summary judgment by adducing a new and un-pled theory of liability in opposition to a dispositive motion.

---

[7] Javansalehi asserts that, at the time defendants contacted her to comply with their obligation under Local Rule 7-1(a) to meet and confer with her regarding their partial summary judgment motion, she advised defendants of her intention to proceed with her three retaliation claims on the theory that all three claims were premised on Ahad's conversation with Fallazadeh regarding Javansalehi's entitlement to health insurance benefits. Indeed, Javansalehi purports to assign error to defendants' purported "failure" to address the newly asserted factual basis of her claims in their moving papers. Javansalehi provides no explanation for her own failure to amend her pleading during the discovery phase of these proceedings to conform to her revised position regarding the factual predicate of her retaliation claims.

I agree with the defendants both that *Coleman* stands for the stated proposition and that Javansalehi was dilatory in failing to seek leave to amend her pleading to conform to her new understanding of the factual predicate underlying her claim at or prior to the close of discovery, but I disagree with the defendants that, under *Coleman*, I am required to exclude from consideration Javansalehi's newly espoused theory of her case.  The *Coleman* court was confronted with a plaintiff who pled a discrimination claim premised on a theory of disparate *treatment*, and subsequently opposed summary judgment by adducing evidence tending to support a claim premised on disparate *impact*, a wholly novel legal theory of liability.  *See id.* Here, Javansalehi's newly articulated "theory" is not, as in *Coleman*, a novel theory of liability, but rather a novel factual predicate tending to support the same legal theory of defendants' liability as was pled in her complaint.  The courts of the Ninth Circuit treat novel, un-pled factual predicates markedly differently from novel legal theories.  For example, in *William Inglis & Sons Baking Co. v. Itt Cont'l Baking Co.*, 668 F.2d 1014 (9th Cir. 1981), the Ninth Circuit affirmed the decision of the district court below to consider evidence and argument constituting a novel, un-pled factual predicate underlying the plaintiff's conspiracy claim adduced for the first time in opposition to summary judgment.  *See William Inglis*, 668 F.2d at 1052-1054.  In reaching that holding, the court noted that "[t]he district court could have considered [the plaintiff's opposition papers] as a motion to amend the [plaintiff's pleading] to add an additional conspiracy claim pursuant to Fed.R.Civ.P. 15(a)." *Id.* at 1053, n. 70.

> Amendments for the purpose of adding new claims are clearly permitted by Rule 15 and may be introduced and considered during the pendency of a motion for summary judgment. 6 Moore's Federal Practice P56.10 (2d ed. 1976).  "Indeed at times it will be feasible to treat the pleading as though it were amended to conform to the facts set forth in the affidavits." *Id.* at 56-171.

> Motions to amend the pleadings "out of time" are addressed to the discretion of
> the court, but "leave shall be freely given when justice so requires." Fed.R.Civ.P.
> 15(a). *See Jacobson v. Rose*, 592 F.2d 515, 519 (9th Cir. 1978), *cert. denied*, 442
> U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979). Although several factors may be
> relevant in determining whether leave to amend should be granted, *see Foman v.
> Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the most important
> is whether amendment would result in undue prejudice to the opposing party,
> *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

*Id.* The court noted that the *William Inglis* defendant had thoroughly explored the un-pled factual

predicate in discovery and that amendment of the plaintiff's pleading to state a claim based on

that predicate would not have prejudiced the defendant. *See id.* at 1053-1054. On that basis, the

court held that the district court's consideration of the claim as though premised on the un-pled

factual predicate had been proper. *See id.* at 1054.

Moreover, Federal Civil Procedure Rule 15(b) makes clear that the parties may amend

their pleadings not merely at the summary judgment stage of proceedings but even during the

course of trial:

> If, at trial, a party objects that evidence is not within the issues raised in the
> pleadings, the court may permit the pleadings to be amended. The court should
> freely permit an amendment when doing so will aid in presenting the merits and
> the objecting party fails to satisfy the court that the evidence would prejudice that
> party's action or defense on the merits. The court may grant a continuance to
> enable the objecting party to meet the evidence.

Fed. R. Civ. P. 15(b)(1). Prior to trial, as noted by the *William Inglis* court, where the time for

amendment as of right is passed, the courts "should freely give leave [to amend a party's

pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether justice so requires is left

to the discretion of the district courts, "which may deny leave to amend due to 'undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d

522, 532 (9th Cir. 2008), *quoting Foman v. Davis*, 371 U.S. 178, 182 (1962).  "While all these

factors are relevant, the crucial factor is the resulting prejudice to the opposing party." *Howey v.

United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).  Moreover, it is clear that "[t]he mere fact

that an amendment is offered late in the case is. . . not enough to bar it." *Id.* at 1191, n.3.

      I am persuaded that, here, justice will be better served by permitting Javansalehi to

present the soundest available factual basis for her retaliation claims, including her cause of

action for wage-claim retaliation, before the merits of her claims are decided, so long as

defendants have made no showing that to permit the amendment would cause them undue

prejudice or that Javansalehi's dilatory conduct was the product of bad faith.  Because defendants

have made no such showing, I construe Javansalehi's pleading as if appropriately amended to set

forth, as the factual basis underlying her cause of action for wage-claim retaliation, her complaint

to Ahad regarding Atlas' failure to provide her with health benefits (and Ahad's subsequent

conversation with Fallazadeh regarding Javansalehi's complaint).  In light of that construal, I find

that it is appropriate to consider Javansalehi's newly espoused theory of her case in resolving the

defendants' motion.

      Defendants argue that, in the event the court elects to consider Javansalehi's wage-claim

retaliation cause of action as though premised on the newly articulated factual predicate, the

cause of action must nevertheless fail as a matter of law because to constitute protected activity

under Section 355, a wage claim must be made in connection with compensation for "work

previously performed" rather than with anticipated compensation, *Perri*, 187 Or. App. at 89, and

here the subject of Javansalehi's complaint was (purportedly) not an accrued entitlement to health

insurance benefits but rather the date upon which such entitlement would accrue in the future. I note that, although defendants have offered evidence suggesting the truth of their position that Ahad's inquiry to Fallazadeh was forward- rather than backward-looking, Javansalehi has offered her declaration that her complaint, and Ahad's subsequent conversation with Fallazadeh, took place after she had already worked for Atlas for the three-month period requisite to entitlement to health insurance benefits.[8] Because this disputed question of fact is material to Javansalehi's cause of action for wage-claim retaliation, defendants are not entitled to summary judgment as a matter of law in connection with Javansalehi's third enumerated cause of action.

In light of Javansalehi's failure to provide defendants with notice of her newly developed theory of the case prior to the close of discovery, the parties are advised that I will consider favorably any defense motion to re-open discovery, to extend some or all case deadlines (including the date for which trial has been set), or to renew defendants' motion for summary adjudication of Javansalehi's cause of action for wage-claim retaliation.

---

[8] I disagree with the defendants' argument that Javansalehi's declaration constitutes a "sham affidavit" by virtue of contradicting her own prior sworn deposition testimony. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). While it is true that Javansalehi testified in deposition that her conduct that caused Fallazadeh's alleged retaliation was her conversation with Lotfi regarding his entitlement to overtime compensation, and that she did not know of anything else that might have caused the retaliation, such testimony does not clearly contradict her subsequent declaration that the retaliation was caused by her complaint, conveyed to Fallazadeh through Ahad, regarding her own entitlement to health insurance benefits. The inconsistency between the two positions can be readily explained by postulating that, at the time of her deposition, Javansalehi failed to recall Ahad's conversation with Fallazadeh or failed to consider that Ahad's conversation might have triggered a retaliatory response. Moreover, it appears undisputed that the subject conversation took place, although there is a dispute as to when it did so, suggesting that invocation of the sham affidavit rule would be inappropriate here. *See id.* at 998-999.

Page 14 - OPINION AND ORDER

**II.    Javansalehi's Fourth Cause of Action (Whistle-Blower Retaliation)**

Under Oregon law, employers are prohibited from discharging or otherwise

discriminating against employees for reporting the employers' unlawful conduct (whistle-blower

retaliation):

> (1)    It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.
>
> (2)    The remedies provided by this chapter are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section.

Or. Rev. Stat. 659A.199.

As was the case in connection with Javansalehi's third cause of action (for wage-claim

retaliation), Javansalehi pled her cause of action for whistle-blower retaliation as solely premised

on her conversation with Lotfi regarding Lotfi's entitlement to overtime compensation. It is

undisputed that Javansalehi did not report Atlas' purported failure to pay Lotfi overtime to any

agency with authority to enforce applicable wage and hour law or to any person employed by

Atlas with authority to modify or amend the manner of Lotfi's compensation. As such, the

conversation cannot have constituted a report of unlawful activity constituting protected conduct

under Section 199. In addition, there is no evidence of record to suggest that Fallazadeh knew

about Javansalehi's discussion with Lotfi at the time he caused Atlas to effect Javansalehi's

termination, and it is clear that a claim for retaliation will not lie where the decisionmaker has no

actual knowledge of the adversely affected employee's protected conduct. It is therefore clear

that Javansalehi's whistle-blower retaliation claim cannot, as a matter of law, survive summary

judgment to the extent premised on Javansalehi's conversation with Lotfi.

However, also as was the case in connection with Javansalehi's third cause of action, in

opposition to defendants' dispositive motion Javansalehi for the first time espoused the position

that her cause of action for whistle-blower retaliation is premised, not on her conversation with

Lotfi, but rather on her complaint to Ahad, as subsequently conveyed to Fallazadeh by Ahad,

regarding Atlas' failure to provide Javansalehi with health insurance benefits. As discussed

above, in the absence of any showing that appropriate amendment of Javansalehi's pleading

would unduly prejudice the defendants, or that Javansalehi's dilatoriness in failing to amend her

pleading at or prior to the close of discovery was motivated by bad faith, Javansalehi's newly

adduced evidence and argument may properly be considered in resolving the defendants' motion.

*See* Fed. R. Civ. P. 15(a)(2); *see also, e.g.*, *William Inglis*, 668 F.2d at 1052-1054.

Defendants argue that, in the event the court elects to consider Javansalehi's whistle-

blower retaliation cause of action as though premised on the newly articulated factual predicate,

the cause of action must fail as a matter of law because to constitute protected activity under

Section 199, the employee must have "in good faith reported information that the employee

believes is evidence of a violation of a state or federal law, rule or regulation," Or. Rev. Stat.

659A.199, and here Javansalehi has failed to offer evidence of her good faith belief that the

failure to provide her with health benefits was in violation of applicable law. Defendants are

correct:  there is nothing in the evidentiary record from which a trier of fact could reasonably

conclude that Javansalehi believed she had a right to health insurance benefits under state or

federal law. In the absence of such evidence, Javansalehi's claim necessarily fails to the extent

premised on Javansalehi's complaint regarding Atlas' failure to provide her with health insurance benefits. Moreover, although no Oregon courts have yet had occasion to construe Section 199 in a published opinion, in light of the plain language of the statute I find it unlikely that, in enacting Section 199, the Oregon courts intended to create a cause of action for whistle-blower retaliation premised on an employee's conduct in making a wage claim directly to the employer. Making a wage claim is already protected activity under Or. Rev. Stat. 652.355, and it would strain the plain meaning of the statutory language to interpret a claim of entitlement to compensation for services rendered as a report of "information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." In any event, Javansalehi's failure to offer evidence that her complaint constituted a report of information she in good faith believed constituted evidence of an unlawful practice is fatal to her claim to the extent premised on her health insurance complaint.

At oral argument in connection with Javansalehi's whistle-blower retaliation claim, counsel for Javansalehi for the first time announced Javansalehi's reliance on a second novel, un-pled factual predicate. Counsel asserted that the whistle-blower retaliation claim could be construed as premised on Javansalehi's complaint to Ahad "that it was not right" that Atlas should reduce her work schedule from six days to four days per week. Because this last proposed factual predicate was announced for the first time at oral argument, defendants have had no opportunity, such as they had in connection with the novel predicate first proposed in Javansalehi's opposition papers, to offer evidence or argument regarding prejudice or bad faith. Nevertheless, assuming *arguendo* that, under Federal Civil Procedure Rule 15(a)(2) and *William Inglis, supra*, it would be appropriate to permit Javansalehi to go forward with her claim as

though premised on her most recently advanced factual predicate, the claim clearly fails as a matter of law to the extent so premised: there is no evidence of record that Fallazadeh had knowledge of Javansalehi's complaint regarding the reduction in her hours at the time he terminated her employment. Although Javansalehi asserts that her claim can survive because *Ahad*'s knowledge of Javansalehi's complaint must be imputed to Fallazadeh on an agency theory, it is illogical to posit that Fallazadeh could have been motivated to retaliate against Javansalehi on the sole basis of imputed knowledge. As discussed above, a claim of retaliation will not lie in the absence of evidence that the decisionmaker had actual knowledge of the conduct alleged to have motivated the decisionmaker's decision. Even if Javansalehi were permitted to go forward on the basis of her second new theory, her claim would therefore fail as a matter of law on that basis as well.

Because, for the foregoing reasons, Javansalehi cannot as a matter of law prevail on her claim for whistle-blower retaliation, defendants are entitled to summary judgment in connection with Javansalehi's fourth enumerated cause of action.

## III.   Javansalehi's Fifth Cause of Action (Family-Relationship Discrimination)

Oregon law prohibits employers from discharging or otherwise discriminating against any employee on the *sole* basis of that employee's familial relationship to another employee (family-relationship discrimination):

(1)   Except as provided in subsection (2) of this section, it is an unlawful employment practice for an employer **solely** because another member of an individual's family works or has worked for that employer to:

(a)   Refuse to hire or employ an individual;

(b)   Bar or discharge from employment an individual; or

      (c)     Discriminate against an individual in compensation or in terms, conditions or privileges of employment.

  (2)    An employer is not required to hire or employ and is not prohibited from barring or discharging an individual if such action:

      (a)     Would constitute a violation of any law of this state or of the United States, or any rule promulgated pursuant thereto, with which the employer is required to comply;

      (b)     Would constitute a violation of the conditions of eligibility for receipt by the employer of financial assistance from the government of this state or the United States;

      (c)     Would place the individual in a position of exercising supervisory, appointment or grievance adjustment authority over a member of the individual's family or in a position of being subject to such authority which a member of the individual's family exercises; or

      (d)     Would cause the employer to disregard a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business.

  (3)    As used in this section, "member of an individual's family" means the wife, husband, son, daughter, mother, father, brother, brother-in-law, sister, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, aunt, uncle, niece, nephew, stepparent or stepchild of the individual.

Or. Rev. Stat. 659A.309 (emphasis supplied).

     I note that, in her complaint, Javansalehi alleged that Lotfi's statement to Fallazadeh that Javansalehi was a poor salesperson was a causal factor in Fallazadeh's decision to terminate her employment. It is well established that "a statement in a complaint may serve as a judicial admission." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995), *citing American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Effectively, then, Javansalehi has judicially admitted that Fallazadeh's decision to terminate her employment was not "solely"

Page 19 - OPINION AND ORDER

motivated by her familial relationship to Ahad. Moreover, the record contains no evidence that Fallazadeh harbored any animus against Javansalehi on the basis of her family relationship to Ahad,.[9] and no evidence disputing Fallazadeh's testimony that he made the decision to terminate Javansalehi due to his belief that she had been unexcusedly absent from the workplace.[10] Defendants are therefore entitled to summary judgment as to Javansalehi's fifth cause of action.

## IV.    Javansalehi's Sixth Cause of Action (Unlawful-Practice-Opposition Retaliation)

Oregon law prohibits employers from discharging or otherwise discriminating against any employee for opposing any unlawful practice (unlawful-practice-opposition retaliation):

---

[9] Javansalehi's theory that her termination was solely motivated by familial relationship to Ahad seems in any event highly implausible in light of the undisputed fact that Atlas continued (and still continues) to employ Ahad's stepson Sumrell following the Javansalehis' termination, and indeed placed him in charge of the Hillsboro location for a period of time following his parents' departure from Atlas' employ. Fallazadeh's continued employment of a member of Ahad's family suggests, although it does not conclusively establish, that Fallazadeh was motivated at least in part by some causal factor in addition to Javansalehi's status as a member of Ahad's family when he decided to effect her termination.

Javansalehi's position is implausible for the additional reason that the same actor, Fallazadeh, made within a short period time both the decision to hire and the decision to fire Javansalehi, at all material times with full awareness of her relationship to Ahad. *See Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1096 (9th Cir. 2005) ("where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action"), *quoting Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-271 (9th Cir. 1996). However, in light of the possibility that Fallazadeh could have developed an animus against Ahad during the short period of time between the two decisions, the same-actor inference is likewise non-dispositive here.

[10] Javansalehi argues that evidence of family-relationship animus as a factor motivating the termination decision may be gleaned from the purported fact that Fallazadeh proffers *Ahad*'s absences from work as an explanation for *both* Javansalehis' termination. However, Javansalehi's argument is unpersuasive in that it ignores the gravamen of Fallazadeh's objection to the Javansalehis' conduct, which was that the Javansalehis were colluding to cover for one another's absences from the workplace.

(1)     It is an unlawful employment practice:

* * *

(f)     For any person to discharge, expel or otherwise discriminate
against any other person because that other person has opposed any
unlawful practice, or because that other person has filed a
complaint, testified or assisted in any proceeding under this chapter
or has attempted to do so.

Or. Rev. Stat. 659A.030(1).

As was the case in connection with Javansalehi's third and fourth causes of action (for

wage-claim retaliation and whistle-blower retaliation), Javansalehi pled her cause of action for

unlawful-practice-opposition retaliation as solely premised on her conversation with Lotfi

regarding Lotfi's entitlement to overtime compensation.  It is undisputed that Javansalehi did not

express disapproval of Atlas' purported failure to pay Lotfi overtime to any agency in any manner

to any person with authority to enforce applicable wage and hour law, or to any person employed

by Atlas with authority to modify or amend the manner of Lotfi's compensation, nor did she

cause her purported disapproval of such failure otherwise to come to the attention of any such

person.  As such, the conversation cannot have constituted protected opposition to an unlawful

practice under Section 030(1)(f), and her cause of action for unlawful-practice-opposition

retaliation cannot survive summary judgment to the extent premised thereon.

However, also as was the case in connection with Javansalehi's third and fourth causes of

action, in opposition to defendants' dispositive motion Javansalehi for the first time adopted the

position that her cause of action for unlawful-practice-opposition retaliation is premised, not on

her conversation with Lotfi, but rather on her complaint to Ahad regarding Atlas' failure to

provide her with health insurance benefits, and Ahad's subsequent communication of her

Page 21 - OPINION AND ORDER

complaint to Fallazadeh.  As discussed above, in the absence of evidence either that it would

prejudice defendants to permit Javansalehi to proceed on the basis of the novel factual predicate

or that Javansalehi's dilatory failure to seek leave to amend her pleading prior to summary

judgment was motivated by bad faith, it is appropriate to consider Javansalehi's newly adduced

evidence and argument in resolving the defendants' motion.  *See* Fed. R. Civ. P. 15(a)(2); *see*

*also*, *e.g.*, *William Inglis*, 668 F.2d at 1052-1054.  However, the cause of action still necessarily

fails as a matter of law, because Javansalehi's complaint to her husband cannot be construed as

constituting opposition to an unlawful practice.

      Additionally, as was the case in connection with Javansaehi's fourth cause of action, at

oral argument in connection with Javansalehi's cause of action for unlawful-practice-opposition

retaliation, counsel for Javansalehi for the first time announced Javansalehi's reliance on the

novel, un-pled, and un-briefed factual predicate of Javansalehi's complaint to Ahad "that it was

not right" that Atlas should reduce her work schedule from six days to four days per week.  As

discussed above, even on the *arguendo* assumption that, under Federal Civil Procedure Rule

15(a)(2) and *William Inglis*, *supra*, it would be appropriate to permit Javansalehi to go forward

with her claim as though premised on her most recently advanced factual predicate, the claim

clearly fails as a matter of law to the extent so premised because there is no evidence of record

that any person brought Javansalehi's purported complaint regarding the reduction in her work

schedule to Fallazadeh's attention, and a retaliation claim will not lie where the person making

the decision to effect allegedly retaliatory action lacked actual knowledge that the alleged

protected activity took place.

      Because, for the foregoing reasons, Javansalehi cannot as a matter of law prevail on her

claim for unlawful-practice-opposition retaliation, defendants are entitled to summary judgment in connection with Javansalehi's sixth enumerated cause of action.

## V.   Javansalehi's Seventh Cause of Action (Aiding and Abetting Discrimination or Retaliation)

Oregon law creates a cause of action against persons who materially aid or abet an employer in any practice unlawful under Chapter 659A of the Oregon Revised Statutes:

> (1)   It is an unlawful employment practice:
>
>         * * *
>
>    (g)   For any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.

Or. Rev. Stat. 659A.030(1). According to the allegations of her complaint, Javansalehi's aiding and abetting claim is premised on all three defendants' purported role in facilitating the conduct complained of in Javansalehi's fourth, fifth, and sixth causes of action. However, the parties have advised the court that Javansalehi has abandoned the claim to the extent alleged against Atlas and Fallazadeh, and intends to proceed on the claim only to the extent alleged against Lotfi.

Because, for the reasons discussed above, the predicate Chapter 659A discrimination and retaliation claims cannot survive defendants' dispositive motion as a matter of law, the aiding and abetting claim necessarily fails as well. There can be no cause of action under Section 030(1)(g) in the absence of a viable predicate Chapter 659A claim. Moreover, Javansalehi has in any event offered no evidence that Lotfi engaged in any conduct that could be construed as aiding or abetting the conduct complained of in Javansalehi's 659A claims. Defendants are therefore entitled to summary judgment as to Javansalehi's seventh cause of action.

VI.    **Javansalehi's Eighth Cause of Action (Common-Law Wrongful Discharge)**

The tort of wrongful discharge was established in Oregon "to serve as a narrow exception

to the at-will employment doctrine in certain limited circumstances where the courts have

determined that the reasons for the discharge are so contrary to public policy that a remedy is

necessary in order to deter such conduct." *Draper v. Astoria Sch. Dist. No. 1C*, 995 F. Supp.

1122, 1127 (D. Or. 1998), *citing Walsh v. Consol. Freightways, Inc.*, 278 Or. 347, 351-52,

(1977); *Sheets v. Knight*, 308 Or. 220, 230-31, 779 P.2d 1000 (1989). "The elements of a

wrongful discharge claim are simple: there must be a discharge, and that discharge must be

wrongful." *Moustachetti v. Oregon*, 319 Or. 319, 325, 877 P.2d 66 (1994). Under Oregon law,

two circumstances lead to wrongful discharge: "(1) discharge for exercising a job-related right of

important public interest, and (2) discharge for complying with a public duty." *Draper*, 995 F.

Supp. at 1127, *citing Sheets*, 308 Or. at 230-31). Examples of "exercising a job-related right"

include "filing a workers' compensation claim" and "resisting sexual harassment." *Id.* (citations

omitted). Generally, Oregon courts will not "recognize an additional common law remedy for

wrongful discharge . . . if existing remedies adequately protect the employment related right."

*Carlson v. Crater Lake Lumber Co.*, 103 Or. App. 190, 193, 796 P.2d 1216 (1990). Here,

Javansalehi expressly brings her wrongful discharge claim on the grounds that she was

terminated for resisting and being subject to family relationship discrimination, and/or for

reporting information Javansalehi believed to be evidence of unlawful activity.

Javansalehi argues that the statutory remedies provided for family-relationship

discrimination under Or. Rev. Stat. 659A.309 and for reporting or opposing unlawful practices

under Or. Rev. Stat. 659A.030(1)(f) and/or 659A.199 are inadequate because the only remedies

available under those statutes are back pay, attorney fees, and injunctive relief, including but not

limited to reinstatement, *see* Or. Rev. Stat. 659A.885(1). I agree with Javansalehi that, because

Section 885(1) does not authorize award of compensatory damages other than back pay, the

common-law tort of wrongful discharge is not displaced by the statutory causes of action

available under Sections 309, 030(1)(f), and 199. *See, e.g., Reddy v. Cascade Gen., Inc.*, 227 Or.

App. 559, 571 (2009) ("under Oregon law, an available statutory remedy is deemed adequate so

as to displace a plaintiff's common-law wrongful discharge claim only if the statute provides for

such legal as well as equitable remedies as are needed to make the plaintiff whole, including

damages that will compensate the plaintiff for . . . personal injuries. . ." (citations, internal

quotation marks, and internal modifications omitted)).

Javansalehi's wrongful discharge claim nevertheless fails as a matter of law. To the

extent premised on the theory that Javansalehi was terminated for resisting family-relationship

discrimination, the claim fails because Javansalehi has adduced no evidence from which a trier of

fact could reasonably conclude that she engaged in any conduct that could be construed as

resistance to such discrimination. Indeed, the only clear allegation of conduct constituting

family-relationship discrimination in Javansalehi's complaint is her termination itself, and she

can hardly have been terminated for having resisted termination. Moreover, as noted above,

there is no evidence of record that Javansalehi complained to any person regarding the terms or

conditions of employment at Atlas other than by and through Ahad's conversation with

Fallazadeh regarding Javansalehi's future entitlement to health insurance benefits.

To the extent Javansalehi's wrongful discharge claim is expressly premised on the theory

that she was terminated for being subject to family relationship discrimination, it necessarily fails

because being "subject to" unlawful discrimination is cognizable neither as the affirmative

exercise of a "job-related right of important public interest" nor as compliance with a "public

duty." In addition, as noted above, Atlas did not violate Oregon's proscription of family-

relationship discrimination when it effected Javansalehi's termination, as Javansalehi has

judicially admitted.

Finally, the Oregon courts do not recognize a cause of action for common-law wrongful

discharge arising out of termination in retaliation for reporting unlawful conduct unless the report

is made "to an[] entity or person with authority to take action to enforce the statutory duties that"

the subsequently terminated employee contends were violated. *Roberts v. Or. Mut. Ins. Co.*, 242

Or. App. 474, 481 (2011) (citations omitted). As noted above, Javansalehi asserts only that she

"reported" the failure to pay Lotfi overtime compensation to Lotfi himself, who patently lacked

authority to take action to enforce federal labor law, and offers no evidence that she "reported"

any other unlawful conduct to any other person. In consequence, Javansalehi may not state a

claim for wrongful discharge premised on reporting unlawful conduct.

For the foregoing reasons, defendants are entitled to summary judgment as to

Javansalehi's eighth cause of action, for common-law wrongful discharge.

## VII.   Javansalehi's Ninth Cause of Action (Intentional Interference with Prospective Economic Relations)

By and through her ninth enumerated cause of action as stated in her complaint,

Javansalehi alleges all defendants' liability for interference with her prospective economic

relationships with potential employers following the termination of her employment by Atlas.

However, as noted above, Javansalehi has now advised the court that she does not intend to

pursue this claim. I further note that the evidentiary record contains no evidence that any

defendant engaged in any conduct that could be construed as interference with any prospective

employment relationship Javansalehi may have pursued or contemplated. Defendants are

therefore entitled to summary judgment as to Javansalehi's ninth cause of action.

**VIII.  Javansalehi's Tenth Cause of Action (Intentional Interference with Existing
Economic Relations)**

By and through her tenth enumerated cause of action as stated in her complaint,

Javansalehi alleges Fallazadeh's and Lotfi's liability for interference with her existing economic

relationship with Atlas following the termination of her employment by Atlas, such interference

allegedly taking place outside the scope of their employment duties. As noted above, however,

Javansalehi has advised the court that she does not intend to pursue this claim to the extent

alleged against Fallazadeh. I further note that Javansalehi has offered no evidence from which a

trier of fact could reasonably conclude that Fallazadeh's decision to terminate Javansalehi's

employment was reached outside the scope of Fallazadeh's role as Atlas' principal. I therefore

construe Javansalehi's claim of intentional interference with existing economic relations as

alleged against Lotfi only, on the theory that Lotfi interfered with her employment relationship

when he expressed his opinion to Fallazadeh that Javansalehi was a poor salesperson.

Javansalehi expressly alleges that Lotfi acted outside the scope of his employment duties when

he made the complained-of statement.

Under Oregon law:

To state a claim for intentional interference with economic relations, a plaintiff
must allege: (1) the existence of a professional or business relationship; (2)
intentional interference with that relationship; (3) by a third party; (4)
accomplished through improper means or for an improper purpose; (5) a causal

effect between the interference and damage to the economic relations; and (6)
damages.

*Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999), *citing McGanty v.*

*Staudenraus*, 321 Or. 532, 535 (1995).  Moreover, the Oregon courts have specified that

"[d]eliberate interference alone does not give rise to tort liability."  *Id.*  That is:

> a claim [of liability for intentional interference with contractual or other economic
> relations] is made out when interference resulting in injury to another is wrongful
> by some measure beyond the fact of the interference itself.  Defendant's liability
> may arise from improper motives or from the use of improper means.  They may
> be wrongful by reason of a statute or other regulation, or a recognized rule of
> common law, or perhaps an established standard of a trade or profession.

*Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209-10 (1973).  The *Northwest Natural*

*Gas* court similarly held that:

> To be entitled to reach a jury, a plaintiff must not only prove that defendant
> intentionally interfered with h[er] business relationship but also that defendant had
> a duty of non-interference; *i.e.*, that [it] interfered for an improper purpose rather
> than for a legitimate one, or that defendant used improper means which resulted in
> injury to plaintiff.  Therefore, a case is made out which entitles plaintiff to go to a
> jury only when interference resulting in injury to another is wrongful by some
> measure beyond the fact of the interference itself.

*Northwest Natural Gas*, 328 Or. at 498 (citations, internal quotation marks omitted).  The court

further explained that:

> **[I]f liability in tort is to be based on an actor's purpose, then the purpose
> must be to inflict injury on the plaintiff "as such."**  And, if liability in tort is
> based on an actor's means, then the means must violate some objective,
> identifiable standard, such as a statute or other regulation, or a recognized rule of
> common law, or, perhaps, an established standard of a trade or profession.

*Id.* (citations omitted; emphasis supplied).  Under Oregon law, therefore, a third party's

interference with another party's economic relations is not improperly motivated when its

purpose is the pursuit of the third party's own interests.  *See, e.g., Eusterman v. Northwest*

Page 28 - OPINION AND ORDER

*Permanente, P.C.*, 204 Or. App. 224, 238 (2006) ("not improper" for a corporate party's actions

to be motivated to maximize its profits); *Top Service*, 283 Or. at 212 (not improper for a party to

be motivated to pursue its own business purposes "as it saw them").

     As to the requirement that the intentional interference be effected by a "third party" to the

employment relationship, the Oregon courts have clearly stated that "when an employee acts

within the scope of employment, that employee is not a third party to a contract between the

employer and another for the purpose of the tort of intentional interference with economic

relations." *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995).

> Three requirements must be met to conclude that an employee was acting within
> the scope of employment. These requirements traditionally have been stated as:
> (1) whether the act occurred substantially within the time and space limits
> authorized by the employment; (2) whether the employee was motivated, at least
> partially, by a purpose to serve the employer; and (3) whether the act is of a kind
> which the employee was hired to perform.

*Chesterman v. Barmon*, 305 Or. 439, 442 (1988) (citations omitted).

     Assuming *arguendo* that Javansalehi can satisfy all other elements of her cause of action,

the intentional interference claim fails as a matter of law because the evidentiary record contains

no evidence from which a trier of fact could reasonably conclude that Lotfi was motivated to

injure Javansalehi "as such," as opposed to being motivated to further either Atlas' interests or his

own. Indeed, it is Javansalehi's position that Lotfi was motivated to discredit her in Fallazadeh's

eyes because he wanted her job. In support of this position, Javansalehi points to Lotfi's own

deposition testimony that he requested a sales job at some time following the termination of

Javansalehi's employment. However, even if this evidence is construed *arguendo* as clearly

supporting Javansalehi's conclusion regarding Lotfi's motives, the motive to further his own

interests is simply not wrongful for purposes of an intentional interference claim, *see Eusterman*, 204 Or. App. at 238; *Top Service*, 283 Or. at 212, and no other evidence of record supports the conclusion that Lotfi was solely motivated to cause Javansalehi injury. The only other evidence of record bearing on Lotfi's motives is his own affidavit that he was motivated to make the complained-of statement "because . . . Fallazadeh had asked [him] to be [Fallazadeh's] eyes and ears in the Hillsboro location" and because Fallazadeh had "asked [him] about [Javansalehi's] work habits. . . ." Defendants are therefore entitled to summary judgment as to Javansalehi's tenth cause of action.

IX.    **Javansalehi's Eleventh Cause of Action (Defamation)**

Javansalehi originally pled her defamation claim against both Fallazadeh and Lotfi, but has now expressed her intent to abandon the claim to the extent alleged against Fallazadeh. This is appropriate, because the record contains no evidence that Fallazadeh made any defamatory statement regarding Javansalehi at any material time.

To the extent alleged against Lotfi, Javansalehi's defamation claim as set forth in her complaint appears to be premised solely on Lotfi's statement to Fallazadeh that Javansalehi was a poor salesperson. Defendants identify certain remarks Lotfi is alleged to have made to Sumrell as additional potential bases for Javansalehi's claim, but as defendants correctly note, Javansalehi has conceded that her reputation suffered no injury in consequence of Lotfi's statements to Sumrell, thereby conceding that the statements were non-defamatory. In addition, Javansalehi offers no argument that her claim is premised in any degree on the remarks to Sumrell. I therefore construe the defamation claim as premised solely on Lotfi's statement to Fallazadeh regarding Javansalehi's work performance.

In Oregon, "[t]he elements of a claim for defamation are: (1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm." *Nat'l Union Fire Ins. Co. v. Starplex Corp.*, 220 Or. App. 560, 584 (Or. Ct. App. 2008), *citing L&D*, 171 Or. App. at 22. "A defamatory statement is one that would subject another to hatred, contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the other is held or to excite adverse, derogatory or unpleasant feelings or opinions against the other." *Id.* (internal quotation marks and modifications omitted), *quoting Marleau v. Truck Insurance Exchange*, 333 Or. 82, 94 (2001), *quoting Reesman v. Highfill*, 327 Or. 597, 603 (1998).

"Spoken words, *i.e.*, slander, are actionable *per se* in Oregon if, among other categories of statements, they are words tending to injure the plaintiff in his or her profession or business. *Id.*, *quoting Marleau*, 333 Or. at 95. "Such words must cast aspersions on the plaintiff's ability to perform essential functions, or must assert that the plaintiff lacks a characteristic necessary to successful performance of his or her job." *Id.* at 585, *citing L&D*, 171 Or. App. at 25-26. By contrast, defamation by written publication, or libel, "is defamatory *per se*" without regard to its content. *Bock v. Zittenfield*, 66 Or. App. 97, 101 (Or. Ct. App. 1983), *quoting Newton v. Family Federal Sav. & Loan Asso.*, 48 Or. App. 373, 376 (Or. Ct. App. 1980), *citing Hinkle v. Alexander*, 244 Or. 267, 272 (1966).

The Oregon courts recognize that an otherwise defamatory statement may be subject to a privilege exepting its maker from tort liability:

There are two forms of privilege that may apply in a defamation action; a

> defamatory statement may be either "absolutely privileged" or "qualifiedly
> privileged." An "absolute privilege" bars a claim for defamation. *See Moore v.*
> *West Lawn Mem'l Park*, 266 Ore. 244, 249, 512 P.2d 1344 (1973) ("when
> defamatory matter is absolutely privileged no cause of action exists"). By
> contrast, a "qualified 'privilege'" "does not bar the action, but requires [the]
> plaintiff to prove that the defendant" abused the privileged occasion, in order to
> recover from the defendant. *Bank of Oregon v. Independent News*, 298 Ore. 434,
> 437, 693 P.2d 35, *cert den* 474 U.S. 826, 88 L. Ed. 2d 69, 106 S. Ct. 84 (1985).

*Wallulis v. Dymowski*, 323 Or. 337, 347-348 (1996). The so-called "qualified privilege" applies

to a statement where:

> (1) it was made to protect the interests of defendants; (2) it was made to protect
> the interests of plaintiff's employer; or (3) it was on a subject of mutual concern to
> defendants and the persons to whom the statement was made.

*Id.* at 350, *quoting Wattenburg v. United Medical Lab.*, 269 Or. 377, 380 (1974). The *Wallulis*

court expressly recognized that "[a] defamatory work-related statement made by an employee to

that employee's supervisor concerning another employee's work performance falls into either the

second or third category delineated by the court in *Wattenburg*. Such a statement could be made

to protect the interests of the employer, or it could be on a subject -- such as workplace harmony

-- of mutual concern to the defamer and the supervisor to whom the statement was made." *Id.* at

350-351.

To overcome the qualified privilege, a defamation plaintiff must establish that "the

individual making the defamatory statement either lacked objectively reasonable grounds for the

statement or did not, in fact, believe the statement to be true," or that the statement itself "was

uttered for a motive unrelated to the purpose of the privilege." *Muresan v. Philadelphia*

*Romanian Pentecostal Church*, 154 Or. App. 465, 472 (1998) (citations omitted).

Here, because Lotfi's statement concerned Javansalehi's job performance, so that damages

are presumed, and because it is undisputed that the statement was "published" to Fallazadeh,

Javansalehi's defamation claim will survive defendants' dispositive motion unless Lotfi's

statement was subject to the qualified privilege.  Javansalehi concedes that the qualified privilege

would ordinarily protect an employee's statements to his employer regarding another employee's

work performance, but argues that the record creates a question of fact as to whether Lotfi's

statement falls outside the scope of the privilege as having been made without any objective

basis, or for a motive unrelated either to Atlas' interests or to Fallazadeh's and Lotifi's shared

employment- and/or workplace-related interests.

   In support of her theory that Lotfi lacked any objective basis for making the complained-

of statement, Javansalehi relies solely on the undisputed fact that, at the time he made the

statement regarding Javansalehi's performance as a salesperson, Lotfi was not himself a qualified

salesperson.  However, without more, Lotfi's lack of personal experience as a salesperson is not

sufficient to create a question of material fact as to whether he had or lacked an objective basis

for his statement.  It is undisputed that Lotfi had daily opportunities to observe Javansalehi

making or failing to make sales to customers, and nothing in the phrase "objectively reasonable

grounds" requires that a speaker be qualified as an expert in the area pronounced upon.

Javansalehi offers no evidence to suggest that her sales performance as observed by Lotfi was

consistently exemplary.

   In support of her theory that Lotfi was motivated to make the complained-of statement for

reasons unrelated either to Atlas' interests *qua* Javansalehi's employer or to Lotfi's and

Fallazadeh's shared interest in Atlas' success, Javansalehi notes that defendants have offered

Lotfi's affidavit that he made the statement "because . . . Fallazadeh had asked [him] to be

[Fallazadeh's] eyes and ears in the Hillsboro location" and because Fallazadeh had "asked [him] about [Javansalehi's] work habits. . . ."  Javansalehi argues that a material fact is raised as to the accuracy of Lotfi's affidavit because, in response to a question whether Fallazadeh had discussed "other" job performance issues regarding Javanasalehi with Lotfi (that is, issues other than those Fallazadeh had already acknowledged discussing with Lotfi), Fallazadeh stated "It's not [Lotfi's] position to tell [Fallazadeh] anybody's job performance. . . ."  Javansalehi further argues that a material question is raised on the basis of Lotfi's deposition testimony that, at some time after Javansalehi's termination, Lotfi requested a job in sales.  In addition, Javansalehi offers her declaration testimony that "[a]lmost immediately" after Atlas hired her, she felt that "Lotfi was displaying animosity towards [her] for taking the sales position."

I agree with Javansalehi that her proffered evidence is sufficient, albeit by a thin margin, to create a question of fact as to whether Lotfi was motivated to discredit Javansalehi solely self-interestedly – because he wanted her job – rather than at least in part to promote Atlas' success or to improve operations within the workplace.  In consequence, I conclude that there is a material question of disputed fact as to whether Lotfi so abused the qualified privilege as to remove his statement from its protections.  Defendants are therefore not entitled on the current evidentiary record to summary judgment as to Javansalehi's eleventh enumerated cause of action.

## CONCLUSION

For the reasons set forth above, defendants' motion (#19) for partial summary judgment is

/ / /

/ / /

/ / /

Page 34 - OPINION AND ORDER

granted in part and denied in part, and Javansalehi's fourth through tenth enumerated causes of action are dismissed.

Dated this 31st day of October, 2011.

Honorable Paul Papak
United States Magistrate Judge