IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LESLIE JAVANSALEHI,

    Plaintiff,

v.

BF & ASSOCIATES, INC., BABAK
FALLAZADEH, and MOHAMMED-
REZA LOTFI,

    Defendants.

3:10-CV-850-PK

OPINION AND
ORDER

PAPAK, Magistrate Judge:

    Plaintiff Leslie Javansalehi ("Javansaheli") filed this action against BF & Associates, Inc., Costco Wholesale Corporation, Babak Fallazadeh, and Mohammed-Reza Lotfi on July 20, 2010. Javansalehi voluntarily dismissed Costco as a defendant on September 7, 2010.

    BF & Associates, doing business as Atlas Imports, employed Javansalehi as a sales representative at a Hillsboro, Oregon, retail location from approximately January 10, 2009,

Page 1 - OPINION AND ORDER

through May 26, 2009. Javansalehi's husband, Ahad Javansalehi ("Ahad") was also an employee of BF & Associates ("Atlas"), as was her son (and Ahad's stepson) Josh Sumrell. Fallazadeh is (and at all material times was) the principal and owner/manager of Atlas, and Lotfi is (and at all material times was) an employee of Atlas. Javansalehi filed eleven separate causes of action against the defendants arising out of the termination of her employment by Atlas and out of the terms and conditions of her employment prior to her termination. Specifically, Javansalehi filed claims alleging Atlas' liability for wrongful discharge in violation of Oregon common law, Atlas' and Fallazadeh's liability for failure to pay overtime in violation of the federal Fair Labor Standards Act (29 U.S.C. § 216(b)), failure to pay Javansalehi final wages due and owing following the termination of her employment within the time specified for doing so under Or. Rev. Stat. 652.140(1), retaliation for complaining about wage discrimination in violation of Or. Rev. Stat. 652.355, retaliation in response to whistle-blowing activity in violation of Or. Rev. Stat. 659A.199, family relationship discrimination in violation of Or. Rev. Stat. 659A.309, and retaliation for opposing unlawful practices in violation of Or. Rev. Stat. 659A.030(1)(f), all defendants' liability for aiding and abetting discrimination and/or retaliation in violation of Or. Rev. Stat. 659A.030(1)(g), intentional interference with prospective economic relations while acting within the scope of their employment duties and/or as Javansalehi's employer, and defamation, and Fallazadeh's and Lotfi's liability for intentional interference with existing economic relations while acting outside the scope of their employment duties.

On August 18, 2011, defendants moved for partial summary judgment as to nine of Javansalehi's eleven claims. Specifically, defendants sought summary adjudication of Javansalehi's three retaliation claims (brought under Sections 652.355, 659A.199, and

Page 2 - OPINION AND ORDER

659A.030(1)(f)), family relationship discrimination claim (brought under Section 659A.309), aiding and abetting claim (brought under Section 659A.030(1)(g)), common-law wrongful discharge claim, two common-law intentional interference claims, and common-law defamation claim. At oral argument in connection with defendants' motion of August 18, 2011, the parties advised the court that the parties had settled Javansalehi's Section 140(1) claim for failure to make timely payment of final wages, and counsel for Javansalehi advised the court that Javansalehi had abandoned her claim for intentional interference with prospective economic relations in its entirety, her claim for intentional interference with existing economic relations to the extent alleged against Fallazadeh, and her claim for defamation to the extent alleged against Atlas and Fallazadeh. On November 1, 2011, these chambers granted defendants' motion in part and denied it in part, granting summary judgment in defendants' favor as to Javansalehi's Section 659A.199 claim for whistle-blower retaliation, her Section 659A.309 claim for family-relationship discrimination, her Section 659A.030(1)(f) claim for unlawful-practice-opposition retaliation, her Section 659A.030(1)(g) aiding and abetting claim, her wrongful discharge claim, her intentional interference with prospective economic relations claim, and her intentional interference with existing economic relations claim, and otherwise denying defendants' motion. This court has federal question jurisdiction over Javansalehi's FLSA overtime claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state-law claims pursuant to 28 U.S.C. § 1367.

Now before the court is defendants' second motion (#42) for partial summary judgment, by and through which defendants seek summary adjudication (i) of Javansalehi's Section 652.355 claim for wage-claim retaliation and (ii) of her FLSA overtime claim to the extent she seeks

Page 3 - OPINION AND ORDER

damages in connection with that claim calculated at a rate in excess of one half the normal hourly rate at which her time was compensated while she was employed by Atlas. I have considered the motion, all of the pleadings and papers on file, and oral argument on behalf of the parties. For the reasons set forth below, (i) to the extent defendants' motion addresses Javansalehi's Section 652.355 claim for wage-claim retaliation, it is construed in part as a motion for reconsideration, the constructive motion for reconsideration is granted, and on reconsideration of my prior decision denying partial summary judgment in connection with the Section 652.355 claim, I reverse my prior decision and grant partial summary judgment as to that claim; (ii) to the extent defendants' motion addresses the method by which Javansalehi's FLSA damages should be calculated, the motion is construed as a motion *in limine* and the constructive motion is granted; (iii) Javansalehi's Section 652.355 claim is dismissed with prejudice and Javansalehi's informal request for leave to amend her pleading to state an ERISA claim in its stead is denied; (iv) I find that the proper method for calculating Javansalehi's FLSA damages is to multiply the number of overtime hours worked times one half Javansalehi's regular hourly rate of pay; and (v) defendants' motion is otherwise denied as moot.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

Page 4 - OPINION AND ORDER

1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND[1]

Atlas is in the business of selling handmade imported rugs at retail. A significant portion of Atlas' business is conducted in stores located within retail establishments operated by former defendant Costco. Atlas' Hillsboro location, where Javansalehi was employed, is such a store.

In September 2007, Atlas hired Ahad, Javansalehi's husband, as the sales manager at Atlas' Hillsboro location. Shortly thereafter, Atlas hired defendant Lotfi and third-party Josh Sumrell (Javansalehi's son) to work under Ahad in the Hillsboro location.

In or around December 2008 or January 2009, Atlas moved Sumrell from his position in the Hillsboro location to a "roadshow" position, which required him to travel to Costco stores lacking a permanent Atlas presence and to spend one to two weeks selling rugs in each such location. Effective approximately January 10, 2009, Atlas hired Javansalehi to fill the sales position left vacant by Sumrell's departure from the Hillsboro location. Atlas initially required Javansalehi to work six days per week at the Hillsboro location, at a monthly salary of $4,000.

Defendants offer Fallazadeh's testimony that, shortly after Javansalehi's hire, he began to suspect that Javansalehi and Ahad were colluding to reduce the number of hours each spent

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

Page 5 - OPINION AND ORDER

working in the Hillsboro location, while continuing to draw their full salaries. Fallazadeh emphasizes that, because Atlas' business model assumed a low volume of high-profit sales, it was essential that salespeople be ready and available at all times to serve customers on those relatively infrequent occasions when customers entered the store. Fallazadeh testifies that Atlas' delivery employees would report the Javansalehis' unanticipated absence from the store when deliveries were made, and that when Fallazadeh would call Ahad's mobile phone to ask questions about inventory, Ahad would frequently claim to be unable to answer the question because he was serving a customer, and would only call back to respond 30 to 45 minutes later (that is, after the lapse of sufficient time to permit travel to the Hillsboro store). Defendants take the position that Ahad's proffered explanation for the need to call back is inherently implausible, in that a salesman generally will not take a phone call while serving a customer, but rather will usually wait until the customer has been served before taking or returning calls.

On a weekend day some time in the first three months of 2009, Fallazadeh made a "surprise visit" to the Hillsboro location, and found that Ahad was absent despite being scheduled to work. Javansalehi called Ahad and advised him that Fallazadeh was in the store. While Fallazadeh waited for Ahad to return, Fallazadeh observed Javansalehi serving customers. Defendants offer Fallazadeh's testimony that his observation of Javansalehi's sales methods established that she was not a "qualified" salesperson and that she was "bad" at selling rugs. Some time thereafter, Fallazadeh asked Lotfi to "keep an eye on the Javansalehis' attendance" and to report to him if they continued to miss work.

According to Fallazadeh's testimony, it was Atlas' practice to offer health insurance to those of its employees employed on a full-time basis, after they had worked for the company for

Page 6 - OPINION AND ORDER

three months. In or around April 2009, after Javansalehi had been working for Atlas for approximately three months, Javansalehi complained to Ahad that Atlas was not providing her with health benefits. Ahad subsequently brought the complaint to Ahad's attention. According to Fallazadeh's testimony, Fallazadeh had at that time already made a decision to reduce Javansalehi's work schedule to four days per week – making her ineligible for health insurance benefits – but had not yet either implemented the decision or communicated it to Javansalehi. It appears undisputed that Fallazadeh so advised Ahad at that time. Although initially a disputed question of fact, it is now similarly undisputed that Javansalehi began inquiring about her entitlement to receive health benefits prior to completion of her first ninety days in Atlas' employ, and that she continued to make such inquiries and to request inclusion in Atlas' health benefits plan following passage of the probationary ninety-day period (making at least one such inquiry in writing after the end of the probationary period). Atlas subsequently reduced Javansalehi's work schedule to four days per week, and declined to provide her with health insurance benefits.

At some unspecified time during the tenure of Javansalehi's employment by Atlas, Javansalehi had a discussion with Lotfi regarding the fact that Lotfi (like Javansalehi) was not paid overtime. Javansalehi told Lotfi that his pay stubs constituted evidence that Atlas was violating federal wage and hour law by failing to pay Lotfi overtime. Javansalehi subsequently reported having had that conversation with Lotfi to her husband, Ahad, and to no other person. Ahad warned Javansalehi not to press the matter further and not to tell anyone else that the conversation had taken place. Neither Ahad nor Lotfi reported the conversation to any other person, and Fallazadeh did not learn that the conversation had taken place until after this action had been filed.

Page 7 - OPINION AND ORDER

In late May 2009, Lotfi reported to Fallazadeh that Ahad and Javansalehi were both absent from the workplace despite being scheduled to work. Lotfi further advised Fallazadeh at that same time of his opinion that Javansalehi was a poor salesperson. At or around that time, Fallazadeh made the decision to terminate both Ahad's and Javansalehi's employment. It appears undisputed that the last day Javansalehi worked for Atlas was May 26, 2009.

## ANALYSIS

### I. Javansalehi's Claim for Wage-Claim Retaliation (Or. Rev. Stat. 652.355 )

Defendants move for partial summary judgment as to Javansalehi's cause of action for wage-claim retaliation in violation of Or. Rev. Stat. 652.355. Section 652.355 provides that employers may not discharge or otherwise discriminate against employees for, among other things, making a wage claim:

> (1)  An employer may not discharge or in any other manner discriminate against an employee because:
>
>   (a)  The employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim.
>
>   (b)  The employee has caused to be instituted any proceedings under or related to ORS 652.310 to 652.414.
>
>   (c)  The employee has testified or is about to testify in any such proceedings.
>
> (2)  A violation of this section is an unlawful employment practice under ORS chapter 659A. A person unlawfully discriminated against under this section may file a complaint under ORS 659A.820 with the Commissioner of the Bureau of Labor and Industries.

Or. Rev. Stat. 652.355. The Oregon Court of Appeals has noted that Or. Rev. Stat. 652.320(7) defines a wage claim for purposes of Section 652.355 as "an employee's claim against an

employer for compensation for the employee's own personal services . . . ," including a claim for "wages, compensation, damages or civil penalties provided by law to employees in connection with a claim for unpaid wages." *Perri v. Certified Languages Int'l, LLC*, 187 Or. App. 76, 88-89 (2003), *quoting* Or. Rev. Stat. 652.320(7). The *Perri* court went on to specify that:

> "Compensation" means "payment for value received or service rendered." Webster's Third New Int'l Dictionary 463 (unabridged ed 1993) (emphasis added). **That definition, which employs a past tense verb, suggests that compensation is payment for work previously performed.** That interpretation of the term "compensation" also is consistent with the second clause of the subsection. Under that clause, in addition to "wages" and "compensation," a claimant may recover damages and civil penalties. He or she may do so, however, only "in connection with a claim for *unpaid* wages." (Emphasis added.) Thus, although the second clause of ORS 652.320([7]) permits recovery of amounts that are not themselves compensation for work, to the extent that those amounts are available in the context of a wage claim, the use of the past tense ("unpaid wages") again indicates that **the wage claim must pertain to work previously performed.**

*Id.* at 89 (bolded emphasis supplied; footnote omitted).

In her complaint, Javansalehi premised her claim for wage-claim retaliation solely on her conversation with Lotfi regarding Lotfi's entitlement to overtime compensation and Atlas' failure to pay such compensation to Lotfi. Because the subject of Javansalehi's statements to Lotfi was compensation due to Lotfi for his services to Atlas, and not compensation due to Javansalehi for her own personal services, however, as a clear matter of law her claim so premised and so pled was patently non-viable. *See id.* at 88.

In opposition to defendants' previous partial summary judgment motion, Javansalehi adopted the novel position that her cause of action for wage-claim retaliation was premised, not on her conversation with Lotfi, but rather on her complaint to Ahad, subsequently conveyed to Fallazadeh by Ahad, regarding Atlas' failure to provide Javansalehi with health insurance

Page 9 - OPINION AND ORDER

benefits, a factual predicate not referenced in any manner in Javansalehi's pleading. I construed Javansalehi's opposition argument as constituting a motion for leave to amend her pleading to state that factual predicate, and granted the construed motion. In considering the merits of defendants' previously filed motion for partial summary judgment in connection with Javansalehi's Section 652.355 claim to the extent premised on the novel predicate, I found on the record then available to me that the evidence did not permit any conclusion as to whether, at the time Javansalehi made her complaints regarding entitlement to health benefits, her entitlement had already accrued or, alternatively, was contemplated to accrue in the future[2] (a complaint regarding entitlement to health benefits is not a wage complaint for purposes of Section 652.355 unless the benefits would constitute compensation for work previously performed, *see id.* at 89), and on that basis denied defendants' motion as to the Section 652.355 claim.

Defendants now move for dismissal of Javansalehi's Section 652.355 claim on the primary ground that her claim is preempted by ERISA.[3] Although she opposes defendants' motion, in the alternative to her opposition arguments Javansalehi requests that, in the event this

---

[2] The parties have since submitted evidence tending to establish that Javansalehi made complaints regarding her entitlement to health insurance benefits both before and after that entitlement accrued.

[3] Defendants additionally argue, in the alternative, that because health insurance benefits provide coverage "for future treatment," such benefits are "inherently prospective" and therefore do not constitute compensation for services already provided by an employee. On that basis, defendants argue that Javansalehi has failed to state a claim under Section 355, because her complaints were necessarily forward-looking and therefore not a "wage claim" for purposes of Section 355. However, because it is clear that Javansalehi's complaint regarding her entitlement to health insurance benefits was not a complaint regarding entitlement to future medical treatment, but rather a complaint regarding entitlement to the benefit of the health insurance premiums Atlas paid for its employees under its benefits plan, it is clear that defendants' alternative theory necessarily fails as a matter of law.

Page 10 - OPINION AND ORDER

court agrees with defendants that the Section 652.355 claim is preempted, she be granted leave to amend her pleading to restate her claim as an ERISA claim. In response to that request, defendants argue that any such claim would now necessarily be time-barred, and that any amendment of her pleading to state an ERISA claim would not relate back to the date she filed her original complaint because such amendment would require the allegation of new facts not alleged in Javansalehi's original pleading.

Defendants' argument in support of their ERISA-preemption theory appears well taken. ERISA expressly provides that its provisions are intended broadly to preempt state-law causes of action relating to employee benefit plans:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003 (a) of this title and not exempt under section 1003 (b) of this title.

29 U.S.C. § 1144(a) (ERISA § 514(a)).[4] Moreover, "[i]t is well-settled in this circuit that a wrongful termination claim based on the theory that the employer intended to avoid pension or insurance payments is preempted by ERISA." *Felton v. Unisource Corp.*, 940 F.2d 503, 508 (9th Cir. 1991) (citations omitted); *see also, e.g., Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 482, 484, 484-485 (1990). Nevertheless, for the following reasons I need not reach, and do not reach, defendants' ERISA preemption argument, but rather dismiss Javansalehi's Section 652.355 claim on the grounds that I improvidently denied defendants' previous motion for partial summary judgment as to that claim.

If correct, defendant's argument that there could be no relation back if Javansalehi were to

---

[4] The statutory exceptions to ERISA's broad preemptive force all appear clearly inapplicable to Javansalehi's claim.

Page 11 - OPINION AND ORDER

amend her complaint to state an ERISA claim (because such amendment would require the allegation of new facts not alleged in Javansalehi's original pleading) applies with equal force to my previous decision to grant Javansalehi's constructive motion to amend her pleading to allege the then-novel factual predicate that Javansalehi had made complaints to Ahad and other Atlas employees regarding her entitlement to health insurance benefits. I therefore construe that argument as an implicit motion for reconsideration of my disposition of defendants' previous motion for partial summary judgment as to the Section 652.355 claim.

An order that resolves fewer than all of the claims among all of the parties "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b). Where reconsideration of a non-final order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." *United States v. Martin*, 226 F.3d 1042, 1048-1049 (9th Cir. 2000). To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986). Generally, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County, Oregon v. ACANDS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Here, it is defendants' implicit position that I committed clear error when I implicitly ruled that Javansalehi's constructive amendment of her pleading related back to the date she filed her complaint in this action.

An amendment "relates back to the original pleading" when it "asserts a claim or defense

Page 12 - OPINION AND ORDER

that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1). "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F3d 1120, 1133 (9th Cir. 2008), *citing Martell v. Trilogy Ltd.*, 872 F.2d 322, 325-326 (9th Cir. 1989). "When a plaintiff seeks to amend a complaint to state a new claim against an original defendant . . . the court compares the original complaint with the amended complaint and decides whether the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading." *Percy v. San Francisco Gen'l Hosp.*, 841 F2d 975, 978 (9th Cir 1988), *quoting Rural Fire Protection Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966). "Thus, amendment of a complaint is proper if the original pleading put the defendant on notice of the 'particular transaction or set of facts' that the plaintiff believes to have caused the complained of injury." *Id.* at 979, *quoting Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir. 1982). Where a complaining party must "include additional facts" in the party's amended pleading in order to support the new claim, "there is no common core of operative facts between" the new and old claims. *Williams*, 517 F3d at 1133.

Here, as noted above, Javansalehi's complaint as originally filed makes no reference to any complaint regarding her entitlement to health insurance benefits. In consequence, under Federal Civil Procedure Rule 15 (c)((1) and *Williams, supra,* no amendment of her complaint to allege that such complaints took place, whether in support of a claim brought under Section 652.355 or an ERISA claim, can relate back to the date Javansalehi originally filed her complaint in this action. Because Javansalehi filed the memorandum that contained the argument I

Page 13 - OPINION AND ORDER

construed as a motion for leave to amend on September 22, 2011, her claim is timely (whether brought as a Section 652.355 or an ERISA claim) only if it could have been timely filed as of that date.

The limitations period applicable to a Section 652.355 claim is one year. *See* Or. Rev. Stat. 659A.875. Moreover, the same limitations period governs any ERISA claim Javansalehi might have brought arising out of her complaints regarding entitlement to health insurance benefits. ERISA § 510, codified at 29 U.S.C. § 1140, provides in relevant part as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan. . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C. § 1140. The statute of limitations applicable to a Section 510 claim is found by reference to the "most analogous" statute of limitations provided under the law of the state in which the ERISA claim is brought. *Felton v. Unisource Corp.*, 940 F.2d 503, 510 (9th Cir. 1991) (citations omitted). Here, the state statute providing the claim "most analogous" to the Section 510 claim Javansalehi might have brought is clearly Section 652.355. Both claims are therefore subject to the same limitations period.

Javansalehi's complaints were made in and around April and May 2009. Defendants have offered into evidence a partially executed tolling agreement purporting to toll "all applicable statutes of limitations for any and all potential claims that may be connected with or raised by . . . Javansalehi . . . in connection with [he]r employment with Atlas . . . for a period of sixty (60) days, effective February 22, 2010." Assuming without deciding that such an agreement was executed between the parties and enforceable, regardless of whether Javansalehi were to proceed

Page 14 - OPINION AND ORDER

with a Section 652.355 or Section 510 claim, any such claim became time-barred in or around late July 2010, more than a year before she constructively sought to amend her complaint to allege the requisite factual predicate. It follows that I improvidently denied defendants' first motion for partial summary judgment as to Javansalehi's Section 652.355 claim. On reconsideration of that decision, I now grant the motion as to that claim, and dismiss with prejudice Javansalehi's cause of action under Section 652.355 for wage-claim retaliation. Defendants' pending motion for partial summary judgment is therefore denied as moot as to Javansalehi's Section 652.355 claim, and Javansalehi's informal request for leave to amend her pleading to state an ERISA Section 510 claim is denied on grounds of futility.

## II. Javansalehi's Prayer for Damages in Connection with her FLSA Overtime Claim (29 U.S.C. § 216(b))

In connection with her FLSA overtime claim, Javansalehi seeks damages measured at $37.50 per hour, or 1.5 times her regular hourly rate of pay, alleged to be $25.00. Defendants argue that her overtime damages should properly be calculated at a rate of $12.50 per hour, or one half her regular hourly rate. Defendants move for summary adjudication of the appropriate rate at which Javansalehi's overtime compensation damages should be calculated.

As a preliminary matter, I note that the proper method of calculating overtime damages is neither a claim or defense at issue in this action nor an element of such a claim or defense. As such, I am unaware of authority to suggest that the proper method of calculating damages is or could be a fit matter for summary adjudication under Federal Civil Procedure Rule 56. However, because the proper method for calculating damages is clearly a fit subject for a motion *in limine*, I construe defendants' motion for partial summary judgment, to the extent it addresses the method

Page 15 - OPINION AND ORDER

for calculating Javansalehi's overtime damages, as a motion *in limine*.

Where an employee is paid a fixed salary as compensation for all hours worked during the workweek, regardless of their number, rather than for a set number of hours, because the fixed salary is intended to pay for all hours worked, the employee is only entitled to additional half-time pay for overtime hours worked (since the employee is presumed already to have been compensated at the normal rate for all hours worked, including the overtime hours). *See* 29 C.F.R. § 778.114. By contrast, when an employee is paid a fixed salary for only for a set number of hours, the employee is entitled to compensation for any overtime hours worked at the full applicable overtime rate. *See id.*; *see also* 29 U.S.C. § 207.

In an opinion letter dated January 14, 2009, the United States Department of Labor opined as follows:

> Under the fluctuating workweek method of payment an employee may be paid a fixed salary that serves as compensation for all hours worked if it is sufficient to compensate the employee for all straight time hours worked at a rate not less than the minimum wage and the employee is paid an additional one-half of the regular rate for all overtime hours. *See* 29 C.F.R. § 778.114(a). The regular rate of pay will vary due to the fluctuating hours worked week to week. *See id.* § 778.114(b). The full salary must be paid even when the full schedule of hours is not worked. *See id.* § 778.114(c). Finally, there must be a "clear mutual understanding of the parties that the fixed salary" is "compensation for however many hours the employee may work in a particular week, rather than for a fixed number of hours per week." *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008); *see* 29 C.F.R. § 778.114(a). As stated in Wage and Hour Opinion Letter FLSA-772 (Feb. 26, 1973),
>
>> [a]n agreement or understanding need not be in writing in order to validate the application of the fluctuating workweek method of paying overtime. **Where an employee continues to work and accept payment of a salary for all hours of work, her acceptance of payment of the salary will validate the fluctuating workweek method of compensation as to her employment.**

Page 16 - OPINION AND ORDER

> Furthermore, the Department's regulations do not require that the "clear and mutual understanding" extend to the method used to calculate the overtime pay. *See Valerio v. Putnam Associates Inc.*, 173 F.3d 35, 40 (1st Cir. 1999) ("**The parties must only have reached a 'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not.**"). Rather, **29 C.F.R. § 778.114 only requires that the employees have a "clear and mutual understanding that they would be paid on a salary basis for all hours worked."** *Clements*, 530 F.3d at 1230.

U.S. Dep't of Labor Wage and Hour Opinion Letter FLSA-2009-3 (Jan. 14, 2009) (emphasis supplied; alternations original).

Here, by and through her complaint Javansalehi alleged in part as follows:

> 16. Throughout Plaintiff's employment, EMPLOYER misclassified Plaintiff as an exempt salaried employee and agreed to compensate Plaintiff at a rate of $4,000.00 per month.
>
> 17. Beginning immediately, EMPLOYER required Plaintiff to work an excessive number of hours each week. Plaintiff regularly worked well in excess of 40 hours per week.
>
> 18. Upon information and belief, Plaintiff reasonably estimates that she worked a total of 285 hours of overtime for EMPLOYER during her employment with EMPLOYER.
>
> 19. Despite Plaintiff's regular work in excess of 40 hours per week, EMPLOYER did not provide Plaintiff extra compensation, in addition to her salary, for all hours worked in excess of 40 hours per week.
>
> 20. Beginning on or about April 19, 2009, EMPLOYER modified Plaintiff's employment contract such that Plaintiff would work 4 days per week and earn a monthly salary of $3,000.00.

Complaint, ¶¶ 16-20. It thus appears from Javansalehi's allegations that from the beginning of Javansalehi's employment, Javansalehi accepted a fixed monthly salary for a variable number of hours worked. This conclusion is borne out by analysis of Javansalehi's deposition testimony, in which she repeatedly affirms that she accepted a fixed salary for the hours she worked for Atlas,

*see, e.g.*, Deposition of Javansalehi at 78:13-14, 118:4-6, 119:13–121:3, and that the number of hours she actually worked for Atlas in any given week were subject to variation, *see, e.g., id.* at 80:2-4, 107:13-15, 107:25–108:114, 109:5-21, 113:3-5, 114:4-11, 116:8-9, 116:23-24. There appears therefore to be no question but that, under 29 C.F.R. § 778.114 and U.S. Dep't of Labor Wage and Hour Opinion Letter FLSA-2009-3 (Jan. 14, 2009), Atlas and Javansalehi had a clear mutual understanding that Javansalehi would be paid on a salary basis for all hours worked.

Because the evidentiary record compels the conclusion that Javansalehi was paid a fixed salary as compensation for all hours worked during the workweek, regardless of their number, under 29 C.F.R. § 778.114, I find that the proper method for calculating Javansalehi's entitlement to overtime compensation is one half Javansalehi's regular rate of pay times the number of overtime hours worked. Defendants' constructive motion *in limine* is therefore granted.

## CONCLUSION

For the reasons set forth above, (i) to the extent defendants' motion (#42) addresses Javansalehi's Section 652.355 claim for wage-claim retaliation, it is construed in part as a motion for reconsideration, the constructive motion for reconsideration is granted, and on reconsideration of my prior decision denying partial summary judgment in connection with the Section 652.355 claim, the court's prior decision is reversed and partial summary judgment is granted as to that claim; (ii) to the extent defendants' motion addresses the method by which Javansalehi's FLSA damages should be calculated, the motion is construed as a motion *in limine* and the constructive motion is granted; (iii) Javansalehi's Section 652.355 claim is dismissed with prejudice and Javansalehi's informal request for leave to amend her pleading to state an ERISA claim in its stead is denied; (iv) the proper method for calculating Javansalehi's FLSA

Page 18 - OPINION AND ORDER

damages is to multiply the number of overtime hours worked times one half Javansalehi's regular hourly rate of pay; and (v) defendants' motion is otherwise denied as moot.

Dated this 2nd day of May, 2012.

_____
Honorable Paul Papak
United States Magistrate Judge